Jerold D. Friedman (Cal. SBN: 290434)
    jerry@lawofficejdf.com
LAW OFFICE OF JEROLD D. FRIEDMAN
9620 S. Las Vegas Blvd. E4 #209
Las Vegas, NV 89123
(213) 536-1244
(281) 667-3506 fax

Attorney for Plaintiffs

U.S. DISTRICT COURT
CENTRAL DISTRICT of CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| TRACY RENEÉ WILLIAMS, BRANDI WILLIAMS, and KRISTOPHER ENOCH, <br><br> Plaintiffs, <br><br> v. <br><br> LOUIS VUITTON USA INC., LOUIS VUITTON AMERICAS, LVMH MOËT HENNESSY LOUIS VUITTON INC., and DOES 1–10, inclusive, <br><br> Defendants. | **Civil Action No.:** 2:24-cv-7825 <br><br> **Complaint for Damages and Injunctive Relief:** <br> 1. **Race Discrimination (42 U.S.C. § 1981)** <br> 2. **Unruh Civil Rights Act (Cal. Civ. Code § 51)** <br> 3. **Business Discrimination (Cal. Civ. Code § 51.5)** <br> 4. **Tortious Breach of Contract** <br> 5. **Theft (Cal. Pen. Code § 496)** <br><br> **JURY DEMANDED** |

Plaintiffs Tracy Reneé Williams, Brandi Williams, and Kristopher Enoch file this Complaint for race-based discrimination, tortious breach of contract, and theft by and against Louis Vuitton USA, Inc., Louis Vuitton Americas, LVMH Moët Hennessy Louis Vuitton, Inc., and Does 1–10, inclusive.

# I.  JURISDICTION

1.      This Court has jurisdiction under 28 U.S.C. § 1331 over federal questions that arise pursuant to 42 U.S.C. § 1981 and the United States Constitution. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the claims based on the laws of the State of California.

2.      This Court has personal jurisdiction over the defendants because they have availed themselves by doing substantial business in California.

3.      Venue is proper pursuant to 28 U.S.C. § 1391 because the events giving rise to this Complaint happened in the Central District.

# II.  PARTIES

4.      Plaintiff **Tracy Reneé Williams** is a resident of Los Angeles County.

5.      Plaintiff **Brandi Williams** is a resident of Cook County, Illinois.

6.      Plaintiff **Kristopher Enoch** is a resident of Los Angeles County.

7.      Defendant **Louis Vuitton USA, Inc.,** is and at all times relevant to suit a Delaware corporation that conducts business in Los Angeles County and throughout the United States, and is headquartered at 1 East 57th Street, 10th Floor, New York, NY 10022.

8.      Defendant **Louis Vuitton Americas** is and at all times relevant to suit an unknown business entity that conducts business in Los Angeles County and throughout the United States.

9.      Defendant **LVMH Moët Hennessy Louis Vuitton, Inc.,** is and at all times

Original Complaint

relevant to suit a Delaware corporation that conducts business in Los Angeles County and throughout the United States.

10.    Defendants Louis Vuitton USA, Inc., Louis Vuitton Americas, and LVMH Moët Hennessy Louis Vuitton, Inc., are hereinafter collectively referred to as "Defendants."

11.    Plaintiffs are informed and believe that Defendants are wholly owned subsidiaries or agents of LVMH Moët Hennessy Louis Vuitton S.A., a corporation organized and existing under the laws of the French Republic (France).

12.    Defendants Does 1–10, inclusive, are now, and/or at all times mentioned in this Complaint were individuals and/or are licensed to do business and/or doing business in the United States. Plaintiffs do not know the true names or capacities, whether individual, partner, or corporate, of Does 1–10, inclusive, and for that reason Does 1–10 are sued under such fictious names. Plaintiffs will seek leave to amend this Complaint to allege such names and capacities as soon as they are determined.

13.    Defendants and Does 1–10, inclusive, and each of them, are now and/or at all times mentioned in this Complaint:

a. Were by their acts and omissions, legally responsible for, and proximately subjected Plaintiffs to, the unlawful practices, wrongs, injuries, and/or damages alleged in this Complaint.

b. Were the agents, servants, and/or employees of some or all other Defendants and Does 1–10, inclusive, and vice versa, and were acting within the course and scope of that agency, servitude, and/or employment.

c.  Were members of and/or engaged in a joint venture, partnership, and common enterprise with each other, and were acting within the course and scope of, and in pursuance of said joint venture, partnership, and common enterprise.

d.  Concurred and contributed to the various acts and omission of each and every one of the other Defendants and Does 1–10, inclusive, in proximately causing the complaints, injuries, and/or damages alleged in this complaint.

e.  Approved of, condoned, and/otherwise ratified each and every one of the acts and/or omissions alleged in this complaint.

f.  Aided and abetted the acts and omissions of each and every one of the other Defendants and Does 1–10, inclusive.

## III.  FACTS

14.    This case seeks damages for invidious race-based discrimination labeled in common parlance as **Shopping while Black**. Tracy Reneé Williams, Brandi Williams, and Kristopher Enoch (collectively, "Plaintiffs") are each Black and are perceived as Black, whether racially or ethnically. Plaintiffs seek relief from Defendants' and Does 1–10, inclusive, for repeated violations of their dignity and rights to conduct business in the United States as equals to White citizens as secured by 42 U.S.C. § 1981, to be treated as equal to all other persons and not to be blacklisted and otherwise suffer race discrimination under the Cal. Unruh Civil Rights Act (Cal. Civ. Code §§ 51, 51.5). Plaintiffs also bring suit on behalf of the public to enforce important rights affecting public interest (Cal. Code of Civil Proc. § 1021.5).

Original Complaint

15.    Defendants cater to wealthy customers like Plaintiffs. For example, the Louis Vuitton "Courrier Lozine 110 LV Brass" storage trunk retails for $99,000.00.[1]

16.    Plaintiffs were customers of Defendants' several Louis Vuitton stores in Beverly Hills and Costa Mesa, California, as well as other Louis Vuitton stores in New York, Chicago, and New Orleans. Collectively, Plaintiffs had purchased over one half million dollars in Louis Vuitton products annually, and up to or around $60,000 on some days, until they were trespassed and blacklisted by Defendants.

17.    Plaintiffs, each, frequently paid for their purchases with cash for several years before and until September 2022. In fact, many of Defendants' customers purchase Louis Vuitton products at their stores with cash. Louis Vuitton, as its business practice, accepts cash payments. Indeed, Louis Vuitton uses a special paper form for its customers who pay for large purchases with cash.

18.    On or about September 29, 2022, Tracy Reneé Williams, received the following e-mail from Louis Vuitton USA, Inc.:

Dear Mrs. Tracy Williams:

It has come to our attention that Louis Vuitton has been unable to satisfy your needs.

Please be advised that Louis Vuitton is no longer prepared to do business with you and we ask that you no longer patronize our boutiques or attempt to order

---

[1] https://us.louisvuitton.com/eng-us/products/courrier-lozine-110-lv-brass-high-end-leathers-nvprod5210047v/M11158, accessed August 28, 2024.

```
our products via telephone, online, or in person at
any Louis Vuitton store.
   Please do not make further attempts to contact the
stores. Any further attempts to communicate with
Louis Vuitton should be directed to our Legal
Department in writing to: Attn: General Counsel,
Louis Vuitton Americas, 1 East 57th Street, New York,
New York 10022.
```

19.    On or about the same date, Brandi Williams and Kristopher Enoch each received materially identical messages from Louis Vuitton USA, Inc.

20.    The statement that "Louis Vuitton has been unable to satisfy your needs" did not reflect any action or complaint by Plaintiffs, who had sought to continue to buy from Louis Vuitton. The total denial of the right to shop is textbook blacklisting.

21.    Plaintiffs determined the basis for their being blacklisted from Defendants' stores was because they are Black.

22.    Defendants falsely identified and published to their staff, whether orally or in writing, that Plaintiffs were drug dealers. This had no basis in fact whatsoever.

23.    After Plaintiffs received the e-mail designated above, they were asked to leave promptly when Plaintiffs entered Louis Vuitton stores, including in Beverly Hills and Costa Mesa, where they previously had shopped repeatedly and were well known. When they attempted to purchase items from other stores where they were not recognized, their sales were rejected after their identities were discovered through

Louis Vuitton transactional computer systems.

## TRACY RENEÉ WILLIAMS

24.     On or about September 2022, Tracy Reneé Williams preordered and paid for approximately $50,000 of merchandise at the Louis Vuitton store in Costa Mesa before she received the e-mail quoted above. The merchandise would have been delivered on or about October 2022 but, evidently due to the issues behind the e-mail, delivery was never made, and she never received any merchandise nor refund for her order.

25.     After Tracy Reneé Williams received the e-mail quoted above, she entered the Louis Vuitton store in Beverly Hills. She was recognized by a White manager who promptly told her that she was no longer welcome to shop at the store and that she would be arrested if she stayed or returned.

26.     Several days later, Tracy Reneé Williams sent her White assistant to the same store. The assistant purchased the same items that Tracy Reneé Williams had wanted to purchase. The White assistant was not told to leave the store and was not threatened with arrest. To the contrary, Louis Vuitton staff treated him respectfully and, even when the assistant stated he would (and did) pay for the items with several thousand dollars cash, he was not otherwise prevented from making the purchase.

27.     Tracy Reneé Williams had earned "VIP" status with Louis Vuitton as one of its best and highest spending customers. VIP status gave Tracy Reneé Williams access to special sales and events not available to the general public, and dedicated Louis Vuitton concierges to tend to her customer service needs.

28.     Defendants occasionally have special sales for their VIP customers (previously including Tracy Reneé Williams). In 2023, one special sale was for limited edition "Air Force 1" sneakers that was offered to VIP customers for $2,300 per pair. Tracy Reneé Williams intended to buy nine pairs of these shoes but was prevented because Defendants blacklisted her. The shoes that Tracy Reneé Williams would have bought were instead sold to the public at auction for $176,400–352,800 per pair and have since sold for over $1,000,000 per pair.[2]

29.     This discrimination continued. For example, as recently as August 29, 2024, Tracy Reneé Williams entered the Louis Vuitton store in Beverly Hills. She brought her damaged Louis Vuitton handbag, which she had purchased for approximately $9,000, that she wanted repaired by the store's specialists. She was quickly recognized by Louis Vuitton staff and ordered to leave the store under threat of arrest.

30.     Tracy Reneé Williams had a lucrative social media presence where she would showcase and review Louis Vuitton products. As a result of being blacklisted from all of Defendants' stores, including online, Tracy Reneé Williams has been unable to showcase or review Louis Vuitton products and she has lost revenue of approximately $40,000/month since she was blacklisted.

## BRANDI WILLIAMS

31.     Brandi Williams is the daughter of Tracy Reneé Williams.

32.     She too suffered discrimination by Defendants. For example, on or about July

---

[2] https://youtu.be/LV0SH1IReRA, accessed August 28, 2024.

2023 (which was after she received the blacklist e-mail described above), a White Louis Vuitton manager at the Beverly Hills store recognized Brandi Williams when she entered the store and refused to allow her to shop. The manager falsely and baselessly accused her of spending "drug money," then ordered her to leave the store under threat of arrest.

33.    At around the same time, Brandi Williams still wanted to buy Louis Vuitton products. She gave a Louis Vuitton gift card linked to her name to a non-Black friend to make a purchase for Brandi Williams from the Louis Vuitton store in Chicago. The friend made the purchase. Soon after, Brandi Williams received a call from a Louis Vuitton employee, whom she believes was the manager of the Chicago store, who told Brandi Williams that he discovered the purchase was for her, that the purchase was (in his word) "illegal," and that she had to return the item to the store.

34.    Later, Brandi Williams had entered the Louis Vuitton store in New Orleans. When store employees recognized her, they told her to leave the store or she would be arrested.

## KRISTOPHER ENOCH

35.    Kristopher Enoch is a friend of Tracy Reneé Williams. He too suffered discrimination by Defendants.

36.    For example, on or about September 29, 2022, Kristopher Enoch was shopping at the Louis Vuitton store in Beverly Hills. He observed Louis Vuitton staff show a non-Black customer a particular jacket, but the customer said he wasn't interested. Staff returned the jacket to the back of the store where it wasn't visible to customers.

Kristopher Enoch then asked staff for the same jacket and said that he wanted to buy it for his friend Tracy Reneé Williams, but Louis Vuitton staff said it was not available. Kristopher Enoch then spoke to the manager, but the manager declined to say why the jacket was not available. Kristopher Enoch was not allowed to buy the jacket.

37.     On or about the same day, Kristopher Enoch received the e-mail described above that blacklisted and prevented him from shopping at any of Defendants' stores.

## SELF-HELP EFFORTS IGNORED

38.     But for the discrimination, including Defendants blacklisting Plaintiffs, each Plaintiff would continue to shop at Louis Vuitton in-store and online.

39.     Tracy Reneé Williams had attempted to resolve whatever concerns Defendants had about doing business with her, Brandi Williams, and Kristopher Enoch. When she had asked the Louis Vuitton of Beverly Hills manager, he gave no reason and blamed the Costa Mesa store. When she had asked the Louis Vuitton of Costa Mesa manager, he gave no reason and blamed the Beverly Hills store.

40.     Later, Tracy Reneé Williams spoke with a Defendant vice president whom she knew through her VIP status. The vice president informed her that he could do nothing about it, and she would have to talk to the Louis Vuitton legal department. However, despite her attempts, no one from the legal department responded to her calls.

41.     Disturbingly, this is by no means the first time that racial discrimination has been alleged against Defendants. Thousands of retail shoppers, including Defendants' customers, were surveyed nationwide for their experience of race-based

discrimination while shopping. The results, published in the January 2021 "Racial Bias in Retail Study," found forty percent of shoppers have personally experienced unfair treatment based on their race or perceived race, and that they were three times more likely than White shoppers to feel negatively judged by their race or perceived race. Also, notably, Oprah Winfrey, a Black celebrity, told her national television audience about her experience with invidious race-based discrimination at a Louis Vuitton. Fortunately, the law strongly protects Plaintiffs against such discrimination.

## IV.  CAUSES OF ACTION

42.    All Plaintiffs incorporate by this reference the above-stated facts into each of the following causes of action.

### – CAUSE OF ACTION 1 –
### UNDER 42 U.S.C. § 1981
### EACH PLAINTIFF AGAINST EACH DEFENDANT

43.    Congress passed the Civil Rights Act of 1866 in the aftermath of the Civil War. Section 1 of that statute includes language codified today in 42 U.S.C. § 1981 ("Section 1981") that broadly protects all persons against race discrimination. Sec. 1981(a) (emphasis added) provides:

> **All persons** within the jurisdiction of the United States **shall have the same right** in every State and Territory **to make and enforce contracts**, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property **as is enjoyed by white citizens**, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

11

44.    Sec. 1981(b) confirms that this covers every aspect of contracting:

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

45.    Private institutions are subject to Sec. 1981 per Sec. 1981(c).

46.    Each Plaintiff, based on their race, was treated differently and less favorably than Defendants' similarly situated actual and potential customers who are not Black, as evidenced by Defendants' actions and inactions described above.

47.    Defendants' actions and inactions, including but not limited to those described above, constitute intentional discrimination in the making, performance, modification, termination, and the enjoyment of benefits of contractual relationships, all in violation of Section 1981.

48.    By their conduct, including but not limited to that described above, Defendants acted and/or refused to act with malice or reckless disregard for each of Plaintiffs' federally protected rights under Sec. 1981.

49.    As a direct and proximate result of Defendants' conduct that is forbidden by Sec. 1981, Plaintiff Tracy Reneé Williams has suffered and continues to suffer lost income in the online communities where she engages in commerce.

50.    As a direct and proximate result of Defendants' conduct that is prohibited by Sec. 1981, all Plaintiffs have suffered significant emotional distress and mental anguish, humiliation, embarrassment, and injury to their individual reputations with Defendants' agents as well as any other persons (public or private, regarding

Original Complaint

creditworthiness or otherwise) to whom Defendants communicated negative information.

51.    As described below, Plaintiffs seek injunctive relief to rectify losses that they suffered due to Defendants' violations of Sec. 1981 and to prevent future losses.

52.    Each Plaintiff seeks damages to the full extent provided by law, injunctive relief to protect against future discrimination, reasonable attorney fees and costs, all pursuant to Sec. 1981 as well as 42 U.S.C. § 1988.

53.    As alleged above, Defendants acted in a despicable manner; with malice, fraud, or oppression; with extreme indifference to the rights of Plaintiffs at a level which decent citizens should not have to tolerate; and with intent to cause harm to Plaintiffs. Defendants are therefore liable for punitive damages.

### – CAUSE OF ACTION 2 –
### UNDER CAL. CIV. CODE § 51
### EACH PLAINTIFF AGAINST EACH DEFENDANT

54.    The Unruh Civil Rights Act (Cal. Civ. Code § 51) establishes independent protection against race-based discrimination. Sec. 51(b) provides (emphasis added):

> **All persons** within the jurisdiction of this state **are free and equal, and no matter what their** sex, **race, color,** religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration **status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever**.

55.    Each Plaintiff, based on their race, was treated differently and less favorably than Defendants' similarly situated actual and potential customers who are not Black, as evidenced by Defendants' actions and inactions described above.

13

56.    Defendants' actions and inactions, including but not limited to those described above, constitute intentional discrimination by failing to provide full and equal accommodations, advantages, facilities, privileges, and services in Defendants' business establishments at their stores and online, all in violation of Sec. 51.

57.    By their conduct, including but not limited to that described above, Defendants acted and/or refused to act with malice or reckless disregard for each of Plaintiffs' state-protected rights under Sec. 51.

58.    As a direct and proximate result of Defendants' conduct that is forbidden by Sec. 51, Plaintiff Tracy Reneé Williams has suffered and continues to suffer lost income in the online communities where she engages in commerce.

59.    As a direct and proximate result of Defendants' conduct that is prohibited by Sec. 51, all Plaintiffs have suffered significant emotional distress and mental anguish, humiliation, embarrassment, and injury to their individual reputations with Defendants' agents as well as any other persons (public or private, regarding creditworthiness or otherwise) to whom Defendants communicated negative information.

60.    As described below, Plaintiffs seek injunctive relief to rectify losses that they suffered due to Defendants' violations of Sec. 51 and to prevent future losses.

61.    Each Plaintiff seeks damages to the full extent provided by law, including treble damages, minimum damages of $4,000 per offense, injunctive relief to protect against future discrimination, reasonable attorney fees and costs, all pursuant to Sec. 52(a).

62.    As alleged above, Defendants acted in a despicable manner; with malice, fraud, or oppression; with extreme indifference to the rights of Plaintiffs at a level which decent citizens should not have to tolerate; and with intent to cause harm to Plaintiffs. Defendants are therefore liable for punitive damages.

**– CAUSE OF ACTION 3 –**
**UNDER CAL. CIV. CODE § 51.5**
**EACH PLAINTIFF AGAINST EACH DEFENDANT**

63.    California law establishes independent protection against race-based blacklisting. Sec. 51.5 provides (emphasis added):

> **No business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, or refuse to** buy from, contract with, **sell to,** or trade with **any person in this state on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51,** […], **because the person is perceived to have one or more of those characteristics, or because the person is associated with a person who has, or is perceived to have, any of those characteristics**.

64.    Each Plaintiff, based on their race, was treated differently and less favorably than Defendants' similarly situated actual and potential customers who are not Black, as evidenced by Defendants' actions and inactions described above.

65.    Defendants' actions and inactions, including but not limited to those described above, constitute intentional discrimination by blacklisting each Plaintiff based on their race, perceived race, or race/perceived race of an associate, all in violation of Sec. 51.5.

//

//

66.    By their conduct, including but not limited to that described above, Defendants acted and/or refused to act with malice or reckless disregard for each of Plaintiffs' state-protected rights under Sec. 51.5.

67.    As a direct and proximate result of Defendants' conduct that is forbidden by Sec. 51.5, Plaintiff Tracy Reneé Williams has suffered and continues to suffer lost income in the online communities where she engages in commerce.

68.    As a direct and proximate result of Defendants' conduct that is prohibited by Sec. 51.5, all Plaintiffs have suffered significant emotional distress and mental anguish, humiliation, embarrassment, and injury to their individual reputations with Defendants' agents as well as any other persons (public or private, regarding creditworthiness or otherwise) to whom Defendants communicated negative information.

69.    As described below, Plaintiffs seek injunctive relief to rectify losses that they suffered due to Defendants' violations of Sec. 51.5 and to prevent future losses.

70.    Each Plaintiff seeks damages to the full extent provided by law, including treble damages, minimum damages of $4,000 per offense, injunctive relief to protect against future discrimination, reasonable attorney fees and costs, all pursuant to Sec. 52(a).

71.    As alleged above, Defendants acted in a despicable manner; with malice, fraud, or oppression; with extreme indifference to the rights of Plaintiffs at a level which decent citizens should not have to tolerate; and with intent to cause harm to Plaintiffs. Defendants are therefore liable for punitive damages.

**– CAUSE OF ACTION 4 –**
**TORTIOUS BREACH OF CONTRACT**
**TRACY RENEÉ WILLIAMS AGAINST EACH DEFENDANT**

72.    On or about September 2022, Tracy Reneé Williams entered into a preorder sales agreement ("Contract") with Defendants.

73.    Defendants breached and repudiated the Contract in numerous material respects, including without limitation the following:

a.  By failing and refusing to deliver the paid-for merchandise in a timely manner.

b.  By failing and refusing to refund the full amount paid if Defendants believed they had a lawful excuse not to perform their terms to deliver merchandise.

c.  By failing and refusing to honor their terms on the basis of Tracy Reneé Williams's race, perceived race, or for her being on Defendants' blacklist.

d.  By misrepresenting to Tracy Reneé Williams that they would not honor the Contract for any reason, especially an invidious reason such as her race.

74.    Tracy Reneé Williams has performed all her explicitly and implicitly required duties by the terms of the Contract, except those whose performance has been waived or excused, if any.

75.    Implicit in the Contract is a covenant of good faith and fair dealing that obligates the parties to act toward each other in good faith, to deal fairly with one another, to make all material disclosures, and not to do anything that might deprive the other of the expectations and benefits of the Contract, and obligating each party to do everything that the Contract presupposes to accomplish its purposes. For the

reasons stated herein, Defendants have breached the covenant of good faith and fair dealing.

76.     Defendants have an independent duty not to discriminate against Tracy Reneé Williams on account of race, perceived race, or blacklisting. Defendants intentionally failed to perform their duties under the Contract because of said discrimination. Therefore, their breach of contract is tortious.

77.     As a direct and proximate result of Defendants' breaches as described herein, Tracy Reneé Williams has been damaged in an amount to conform to proof at trial, but no less than $50,000 plus interest, attorney fees and costs, each as provided by law.

78.     As alleged above, Defendants acted in a despicable manner; with malice, fraud, or oppression; with extreme indifference to the rights of Plaintiff at a level which decent citizens should not have to tolerate; and with intent to cause harm to Plaintiff. Defendants are therefore liable for punitive damages.

### – CAUSE OF ACTION 5 –
### THEFT IN VIOLATION OF CAL. CIV. CODE § 496(c)
### TRACY RENEÉ WILLIAMS AGAINST EACH DEFENDANT

79.     On or about September 2022, Tracy Reneé Williams entered into a preorder sales agreement ("Contract") with Defendants.

80.     At the formation of the Contract, Defendants fraudulently failed to disclose to Tracy Reneé Williams that (a) the Contract would not be honored if she was later trespassed or blacklisted, (b) due to her race or perceived race, she was at risk of

being trespassed or blacklisted, then (c) upon being trespassed or blacklisted, Defendants would take the money she paid and use it for their exclusive use and benefit with the intent to permanently deprive her of her money.

81.     Whereby, on September 29, 2022, when Defendants trespassed and blacklisted Tracy Reneé Williams, Defendants executed their careful and deliberate plan to permanently deprived Tracy Reneé Williams of her money, which meets the requisite *mens rea* for criminal intent.

82.     Where, through fraud or other wrongful act, one receives money that they are not entitled, they become an involuntary trustee of that money for the benefit of the one justly entitled to it (Cal. Civ. Code § 2224). In the course of Defendant's actions, above, Defendants, with authorization of its owners, directors, attorneys, or similarly empowered employees, fraudulently took and used the approximate $50,000 for their own use and exclusive benefit and with the requisite criminal intent.

83.     One who fraudulently appropriates property that has been entrusted to them is guilty of theft (Cal. Pen. Code § 484(a)).

84.     Defendants' actions, described above, constitute theft in violation of Cal. Pen. Code § 496. Consequently, Tracy Reneé Williams is entitled to a just award of treble damages (approximately $150,000), interest, attorney fees, and costs of suit (Cal. Pen. Code § 496(c)).

85.     As a direct and proximate result of Defendants' actions, Tracy Reneé Williams has suffered and continues to suffer damages in an amount to be proven at trial.

Original Complaint

86.    As alleged above, Defendants acted in a despicable manner; with malice, fraud, or oppression; with extreme indifference to the rights of Plaintiff at a level which decent citizens should not have to tolerate; and with intent to cause harm to Plaintiff. Defendants are therefore liable for punitive damages.

## V.  REQUESTED RELIEF INCLUDES DAMAGES AND AN INJUNCTION

87.    In addition to compensatory and punitive damages, attorney fees and costs as provided by 42 U.S.C. §§ 1981, 1988, Cal. Civ. Code §§ 51, 51.5, 52, Cal. Pen. Code § 496, and Cal. Code of Civ. Proc. § 1021.5, each Plaintiff requests permanent injunctive relief from Defendants, and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with, requiring them to

a.  Remove negative information concerning Plaintiffs from their files,

b.  Withdraw or correct such negative information that previously has been communicated or disseminated to any credit reporting service, public agency, or other third party relating to any Plaintiff,

c.  Refrain from communicating or disseminating any such negative information in the future, and

d.  Forbid any future discrimination or retaliation against any Plaintiff.

88.    With respect to these matters, injunctive relief sought is the only means to secure complete and adequate relief, because Plaintiffs lack any plain, adequate, or complete remedy at law to redress these consequences of Defendants' violations –

which are continuing and will continue to cause Plaintiffs to suffer irreparable injury from Defendants' discriminatory acts and omissions. The public interest strongly favors such an injunction because race discrimination is anathema to civilized society.

## VI.  REQUEST FOR RELIEF

89.    Plaintiffs respectfully requests judgment including the following:

   a.  Entry of judgment in favor of each Plaintiff and against Defendants.

   b.  General damages from Defendants.

   c.  Special damages including lost income from Defendants.

   d.  Treble actual damages, including general and special damages, including a minimum of $4,000 per offense, as provided by Cal. Civ. Code §§ 51, 51.5, 52.

   e.  Punitive damages from Defendants.

   f.  Permanent injunctive relief from Defendants, and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them to (i) remove negative information concerning Plaintiffs from Defendants' files, (ii) withdraw or correct such negative information that previously has been communicated or disseminated to any credit reporting service, public agency, or other third party relating to any Plaintiff; (iii) refrain from communicating or disseminating any such negative information in the future; and (iv) forbid any future discrimination or retaliation against any of Plaintiffs;

   g.  Pre- and post-judgment interest.

Original Complaint

h.  Reasonable and necessary attorney fees and costs as provided by 42 U.S.C. §§ 1981, 1988, Cal. Civ. Code §§ 51, 51.5, 52, Cal. Pen. Code § 496(c), and Cal. Code Civ. Proc. § 1021.5.

i.  Such other and further relief as may appear just and appropriate.

## VII.  DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand trial by jury.

Dated: September 13, 2024            By:    LAW OFFICE OF JEROLD D. FRIEDMAN

_/s/ Jerold D. Friedman_

Jerold D. Friedman
Attorney for Plaintiffs

22